UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-MC-91526-PBS

IN RE: MOTION TO QUASH

REPORT AND RECOMMENDATION ON
MOTION TO QUASH[1]

KELLEY, U.S.M.J.

Introduction

Movant Dean Tran seeks to quash grand jury subpoenas duces tecum directed to his sister and her husband and his sister's company. (#1; #2 at 4, 11.) The government opposes.[2] The court held a hearing on October 13, 2023, allowing movant additional time to file a supplemental brief, which he did. (##11, 13 [brief].)

Movant is a former Massachusetts state senator who ran unsuccessfully for Congress in 2022. (#1 at 1.) The grand jury investigation involves a letter from movant's sister's New Hampshire-based company offering movant employment at $120,000 annually, after his election loss. *Id*. at 2. Movant did not accept the offer, allegedly because he could not travel to New

[1] The motion (#1) has been referred to this court (#6), which issues a report and recommendation because denial of the motion is dispositive of the case.

[2] The government's opposition remains under seal although, with the government's consent, the court has ordered that this case will not be under seal, notwithstanding that it relates to grand jury proceedings. (#12.) The grand jury's investigation is described in the government's sealed opposition, and the court does not include details here beyond those apparent from movant's unsealed motion.

1

Hampshire during the Covid-19 pandemic, but he submitted the letter to the Massachusetts Department of Unemployment Assistance. *Id.*

The subpoenas at issue seek from movant's sister, her company, and her husband copies of federal and state tax returns, as well as records pertaining to the preparation of those returns, plus bookkeeping records showing gross income and expenses and billing records, from 2020 to 2022. (#2 at 5, 12.)

For the reasons set forth below, the motion to quash should be DENIED.

I. Standing.

The court recommends, first, that the motion to quash be denied because movant lacks standing. Movant has not established "the existence of a privileged relationship or of a legitimate property or privacy interest in the documents possessed" by his sister, her company, or her husband. *In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 66 (1st Cir. 1987); *see also In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 570 (1st Cir. 2001). In his supplemental brief, movant invokes this test for standing, but fails to identify the privileged relationship or legitimate property or privacy interest. (#13 at 1-2); *see also* #1 at 8 (asserting that subpoenas "call for the production of at least some privileged materials" without specifying privilege or materials).

Movant's reliance in his opening brief on the right to present a defense at trial, *see* #1 at 12-14, is misplaced for the simple reason that the grand jury's investigation is ongoing and has not resulted in any charges against him.[3] Because movant has "not been indicted,. . .there is no present

---

[3] Movant is facing what he characterizes in his opening brief as "unrelated" charges in the Worcester Superior Court. (#1 at 1 n.1.) Significantly, his argument is that the subpoenas at issue discourage his sister from seeking to quash them herself and will discourage her from testifying in his defense at a federal trial, as opposed to any state trial. *Id.* at 3, 5. Movant filed a complaint in this court against the Massachusetts Attorney General in relation to the Worcester charges. District

accusation against [him] for which [he] may wish to prepare a defense." *In re Swearingen Aviation Corp.*, 605 F.2d 125, 127 (4th Cir. 1979) (per curiam) (holding that companies lacked standing to challenge district court's orders imposing secrecy obligation on recipients of grand jury subpoenas).

Movant is wrong to claim that he has no other opportunity to claim abuse of the grand jury process. (#1 at 12-13.) If he is indicted, he can file a motion to dismiss. Movant cites numerous cases in his opening brief regarding intimidation of prospective defense witnesses, *see id.* at 12-14, but just one of those cases involved a claim that the government intimidated prospective defense witnesses through grand jury abuse, occurring twenty days before trial. The case, *United States v. Wadlington*, 233 F.3d 1067 (8th Cir. 2000), underscores that a grand jury abuse claim can be raised by motion to dismiss, upon indictment. *Id.* at 1073-1076 (affirming denial of motion to dismiss).[4]

Unlike cases cited in his opening brief, cases cited in movant's supplemental brief do address the issue of standing. Still, this court is not convinced. Movant relies primarily on the Third

---

Judge Sorokin, applying the *Younger* abstention doctrine, dismissed the complaint. (#22-cv-40086-LTS, #23.) Judge Sorokin's discussion of the Worcester charges, involving movant's interactions with a constituent related to the constituent's late husband's firearms, *see id.* at 4-6, does not suggest any relationship between the Worcester charges and this grand jury investigation.

[4] *United States v. Mechanik*, 475 U.S. 66 (1986), does not, as movant suggests, *see* #1 at 12-13, hold that all errors during grand jury proceedings are rendered harmless by conviction at trial. *Id.* at 72-73 (violation of Fed. R. Crim. P. 6(d), imposing limits on who may be present during grand jury proceedings, was rendered harmless; "We express no opinion as to what remedy may be appropriate for a violation of Rule 6(d) that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of trial"); *see United States v. Reyes-Echevarria*, 345 F.3d 1, 5 (1st Cir. 2003) ("All but the most serious errors before the grand jury are rendered harmless by a conviction at trial. . . . 'Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried'") (first citing *Mechanik*, 475 U.S. at 73, then quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989)).

Circuit's decision in *In re Matter of Grand Jury (Schmidt)*, 619 F.2d 1022 (3d Cir. 1980). *See* #13 at 1. There, two of three judges found that an employer had standing to seek to quash grand jury subpoenas ad testificandum to its employees. *Schmidt*, 619 F.2d at 1026-1027.

The First Circuit in *Diamante* addressed *Schmidt* at length, declining to "fully adopt [its] reasoning:"

> As [the] judge who partially dissented in that case stated, that opinion could be interpreted as "abolishing a standing requirement for intervenors in the grand jury context." *Schmidt*, 619 F.2d at 1032 (Rosenn, J., concurring and dissenting). Such an unlimited holding would have resulted here if we had granted standing on the ground of a vicarious assertion by appellant of a constitutional interest in particular documents belonging to the travel agency. We have based our grant of standing, however, on the scope and gravity of the specific claims in this case, and the factual grounds alleged to support them. We view these claims as presenting allegations of grand jury abuse similar to the kind which the Supreme Court has declared that "were [they] called to the attention of the court, it would doubtless be alert to repress them." *Hale v. Henkel*, 201 U.S. 43, 65 (1906).

*Diamante*, 814 F.2d at 67-68.

In *Diamante*, the appellant was indicted in the United States District Court for the District of Connecticut for aiding in the transport of a participant in a bank robbery and of money. *Id*. at 63. The appellant was arrested in Puerto Rico in August 1985 and removed to Connecticut, where, in denying bail, the magistrate judge observed that the evidence connecting him to the bank robbery was not conclusive. *Id.*

In November 1985, a grand jury in the United States District Court for the District of Puerto Rico issued a subpoena duces tecum to a travel agency for all records pertaining to the appellant. *Id*. The subpoena was accompanied by a cover letter from an Assistant United States Attorney demanding:

> You are not to disclose the existence of this subpoena or the fact of your compliance for a period of 90 days from the date of the subpoena. Any such disclosure could seriously impede the investigation being conducted and, thereby, interfere with the enforcement of the federal criminal law.

*Id*. at 63-64.

The appellant argued that the subpoena was too broad and could result in intimidation and interference in the preparation of his defense in the Connecticut case. He argued that the cover letter imposed a secrecy obligation, in violation of Fed. R. Crim. P. 6(e)(2). *Diamante*, 814 F.2d at 64.

The appellant also argued that the Puerto Rico grand jury was being used for the improper purpose of gathering evidence for the prosecution of the Connecticut case, noting the importance of appellant's travel to the Connecticut case; the magistrate judge's observation regarding the evidence in the Connecticut case; and the involvement of the Assistant United States Attorney assigned to the Puerto Rico investigation in the Connecticut case. *Id*.

In holding that he had standing, the *Diamante* court emphasized that the appellant's claim was "based on the harm to his interests as a defendant in a criminal trial and as a victim of a systematic abuse of the powers of the grand jury." *Id.* at 66. It continued:

> [The appellant] makes quite serious charges of government misconduct: an allegation of an ongoing and widespread violation of [Rule] 6(e)(2), a claim whose factual basis the government has freely acknowledged, as well as a charge, based on several specifically alleged circumstances, that a grand jury is being used for an improper purpose.

*Id*. at 67.

The *Diamante* court, *see id*., relied on *United States v. Doe*, 455 F.2d 1270 (1st Cir. 1972), where the court reviewed the merits of the appellant's claim that a Massachusetts grand jury was being used for the improper purpose of gathering evidence for the prosecution of a California case, noting that appellant "face[d] possible action to his prejudice in Massachusetts, and ha[d] no sure opportunity of full review elsewhere." *Id*. at 1273-1274 & n.2.

The *Diamante* court distinguished the Fourth Circuit's decision in *Swearingen*, *supra*, 605 F.2d 125: "That case presented a rather different factual background than the one before us. The movants had not been indicted, they had not objected to a systematic and widespread practice and there was no broader contention concerning grand jury abuse." *Diamante*, 814 F.2d at 68 n.6.

Here, unlike in *Diamante* and *Doe*, movant does not squarely argue that the grand jury is being used for the improper purpose of gathering evidence for the prosecution of indicted cases, nor is improper use apparent from the nature of the charges in those cases compared to the general subject matter of this grand jury investigation. Unlike in *Diamante*, movant does not squarely argue that the subpoenas at issue interfere with the preparation and presentation of his defense in indicted cases, as opposed to his defense at a federal trial on charges stemming from this grand jury investigation, should he be indicted. In short, this case is unlike the grand jury abuse cases in which the First Circuit has found standing and movant has not drawn the court's attention to other controlling or persuasive authority.

II. Merits.

Even assuming arguendo that movant has standing, the court recommends, in the alternative, that the motion to quash be denied because it wholly lacks merit. The court agrees with the government that movant's allegations regarding the authenticity of the warrant to search his residence and how the press might have come to learn about that search are wildly speculative. *See* #1 at 1, 6-7. Furthermore, just as a grand jury abuse claim can be raised by motion to dismiss, claims regarding the search warrant can be raised by motion to suppress, upon indictment.

Movant has not shown any connection at all between the Massachusetts Registry of Motor Vehicle matters involving his other siblings and these grand jury subpoenas. *See* #1 at 3. As the

government notes, the RMV letters that movant has submitted post-date the subpoenas by weeks. *Compare* #2 at 29-32 *with id.* at 4, 11.

Most importantly, movant has not submitted an affidavit from his sister (or anyone else) to substantiate his factual allegations regarding her interactions with federal officials before she testified at the grand jury and, in particular, whether she was actually intimidated by those interactions (or, for that matter, by the cover letter that accompanied the subsequent grand jury subpoenas duces tecum). *See* #1 at 2, 10; *see also* L.R. 7.1(b)(1) ("Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion"); *see* #22-cv-40086-LTS, #5 (putting movant's counsel on notice of this requirement). The court declines to find that there is anything intimidating or irregular generally about the government seeking records from a witness after he or she has testified before the grand jury, even if she testified favorably to a prospective defendant. This is an entirely expected progression for an investigation.

Movant cites no case law in support of his argument with respect to the cover letter, *see* #1 at 4-5, and, as it turns out, his argument is contrary to controlling case law. The *Diamante* court held that the cover letter sent by the Assistant United States Attorney in that case, quoted above, violated Fed. R. Crim. P 6(e)(2), and ordered that the government communicate to recipients that there was no secrecy obligation but added: "The government is free to express its beliefs about the impact of any disclosure. . . ." *Diamante*, 914 F.2d at 70.

Consistent with the *Diamante* order, the cover letter sent by the Assistant United States Attorney in this case requests non-disclosure and emphasizes that there is no secrecy obligation, before expressing the government's belief about the impact of any disclosure:

> You are hereby requested <u>not</u> to disclose the existence of this subpoena, or the fact of your compliance therewith, to anyone. While you are not required to comply

with this request, any such disclosure could impede the investigation and thereby interfere with the enforcement of federal criminal law.

(#2 at 3) (emphasis in letter).

Regardless, the relief sought by movant – quashing the subpoenas at issue – is not supported by the case law. Despite that the cover letter demanded, rather than requested, non-disclosure, the *Diamante* court merely ordered the government to communicate the lack of secrecy obligation. Other courts have declined to impose more drastic sanctions, like exclusion of evidence. *See United States v. Gigliotti*, #15 CR 204 (RJD), 2015 WL 13691780, at *1-4 (E.D. N.Y. Dec. 23, 2015) (declining to order exclusion of evidence as remedy for admitted violation of Rule 6(e)(2)); *United States v. Blumberg*, #3:97-CR-119 (EBB), 1998 WL 136174, at *1-2 (D. Conn. Mar. 11, 1998) (declining to decide whether defendants had standing or whether cover letter violated Rule 6(e)(2) and denying motion to exclude evidence in absence of any authority requiring government to do more than it had already offered to do, i.e., communicate lack of secrecy obligation); *see also United States v. Bryant*, 655 F.3d 232, 237-240 (3d Cir. 2011) (affirming denial of motion to dismiss based upon alleged violation of Rule 6(e)(2); declining to find that language on face of subpoena was demand, rather than request, and further explaining: "Even if there were witnesses (about whom we do not know) with the mistaken impression that they could not speak to the defense, the District Court took measures to clarify such a misunderstanding well before trial").

Movant's arguments as to relevance and oppressiveness are not remotely persuasive. *See* #1 at 7-10. In determining whether grand jury subpoenas are "unreasonable and oppressive" for purposes of a motion to quash under Fed. R. Crim. P. 17(c)(2), in the absence of privilege, courts generally consider whether the government is seeking relevant materials from a reasonable time

frame and has described them with reasonable particularity. *In re Grand Jury Matters*, 751 F.2d 13, 18 (1st Cir. 1984).[5]

Grand jury subpoenas are presumed reasonable absent a "strong showing" to the contrary by the party seeking to avoid compliance. *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (citing *Mechanik*, 475 U.S. at 75 (O'Connor, J., concurring) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process")); *see In re Grand Jury Proceedings*, 744 F.3d 211, 220 (1st Cir. 2014). When the party seeking to avoid compliance challenges subpoenas on relevancy grounds, the court must deny the motion to quash unless it determines there is "no reasonable possibility" that the materials sought by the government will produce information relevant to the general subject matter of the grand jury's investigation. *R. Enterprises*, 498 U.S. at 301.

In the subpoenas at issue, the government has described the materials with sufficient particularity and limits production to a reasonable two-year period. (#2 at 5, 12.) Movant does not seriously argue otherwise.

There is clearly a reasonable possibility that movant's sister's, her company's, and her husband's tax and financial records from 2020 to 2022 will produce information relevant to the general subject matter of the grand jury's investigation. Records revealing whether the company had the ability to pay movant the amount offered obviously bear on the authenticity of the letter.

---

[5] As noted above, movant does not say which privilege might protect some documents in his sister's, her company's, or her husband's possession, *see* #1 at 8, and the court declines to consider the issue in the absence of developed argument, *see In re Grand Jury Matters*, 751 F.2d at 17 n.4 ("It is well established that blanket assertions of privilege are extremely disfavored and that persons claiming a privilege must establish the elements of privilege as to each record sought and each question asked so that the court can rule with specificity") (cleaned up).

Movant (once again) cites no case law in support of his argument that the court must view the subpoenas suspiciously because they have been issued by a Massachusetts grand jury yet seek records from a New Hampshire company and residents. *See* #1 at 8. The claim ignores that the grand jury is investigating the submission of the offer letter to a Massachusetts agency. Anyway, case law is squarely to the contrary. *Trump v. Vance*, 977 F.3d 198, 211 (2d Cir. 2020) (per curiam) (involving state grand jury: "There is nothing suspect about a grand jury demanding records relating to entities beyond the grand jury's territorial jurisdiction, especially in the context of a financial investigation") (citing *Blair v. United States*, 250 U.S. 273, 282-283 (1919) (involving federal grand jury: "witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation. . . . At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction")).

Contrary to movant's apparent belief, *see* #1 at 8-9, there is no requirement that the government show that the documents it seeks through the subpoenas at issue are not available from other sources. *In re Grand Jury Proceedings (Doe)*, 13 F.3d 459, 462 (1st Cir. 1994) (per curiam) (quoting *In re Grand Jury Proceedings (Doe)*, 862 F.2d 430, 431-432 (2d Cir. 1988) (per curiam) (requirement "would bring investigations to intermittent standstills as the government set out to prove the necessity of each piece of information"); *see In re Grand Jury Matter (Backiel)*, 906 F.2d 78, 88 (3d Cir. 1990) (grand jury "is free to pursue cumulative leads").

Finally, movant's claim that the subpoenas at issue are invalid because they do not "state. . .the title of the proceeding," *see* Fed. R. Crim. P. 17(a), has been rejected in this circuit, *see In re Patriarca*, 396 F. Supp. 859, 870 (D. R.I. 1975) ("It is obvious that no title can be affixed to a pre-indictment grand jury investigation. Common sense and simple logic compel the conclusion that

grand jury subpoenas. . .are not invalid merely because they lack a designation of 'the title. . .of the proceeding[]'").

Conclusion

Whether because movant lacks standing or, if he has standing, because his arguments are devoid of factual and legal support, the motion to quash should be denied.

Review by District Judge

The parties are advised that any party who objects to this Report and Recommendation must file specific written objections with the Clerk of this Court within fourteen (14) days of service of the Report and Recommendation. The objections must specifically identify the portion of the Report and Recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).

October 26, 2023

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge