UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

Suffolk, ss.

| | |
|---|---|
| IN RE: MOTION TO QUASH GRAND JURY SUBPOENA | Docket No. 23-MC-91526 |

**Movant's Objections to Report and Recommendation**

Now comes the Movant, Mr. Dean Tran, who makes objection to the thoughtful and considered report and recommendation of the Magistrate Judge.

**Background**

Dean Tran is currently the subject of investigation by a federal grand jury. The investigation centers on three areas, as the Movant understands it. Firstly, whether Mr. Tran misreported his income for tax purposes in relation to certain rental properties. Secondly, whether Mr. Tran, having been a contractor for his employer before being promoted to permanent employee, whether his wage-type income was properly categorized and reported. Finally, whether he properly received unemployment assistance and certain pandemic benefits based on a job offer that he was unable to accept from his sisters' company. This summer Mr. Tran's house was searched by federal authorities pursuant to a search warrant relating to this investigation.

As the Magistrate Judge noted by cross-reference, Mr. Tran is facing unrelated criminal charges in the Worcester Superior Court. He is also facing unrelated charges in the Suffolk Superior Court, publicly disclosed while this case has been pending.

This proceeding is a motion to quash centered upon subpoenas issued to Mr. Tran's sister, Mrs. Martin, and her husband and their company. Mrs. Martin has previously testified before the grand jury. Subsequently documentary subpoenas were issued to her, her husband, and her

1

company, for a wealth of material. The proceedings before the Magistrate Judge centered primarily on whether Mr. Tran has standing to challenge grand jury subpoenas issued to Mrs. Martin, her husband and her company. Mr. Tran has alleged what he perceives to be a retaliatory subpoena issued to punish a favorable defense witness who has given favorable testimony to the grand jury on his behalf, tainted by a pattern of aggressive tactics by the governmental authorities. The Government denies the substance of Mr. Tran's allegations, but raised the defense of standing and secondarily that no inquiry may be made into the motives of prosecutors and that the Governmental actions are standard fare for criminal prosecution.

The documentary subpoenas seek extensive financial documents, which Mr. Tran has characterized as essentially all financial documents for the Martins and their company. The documentary subpoenas, the search warrant served upon Mr. Tran, photographs showing suspect proceedings against Mr. Tran's other two siblings by the MassRMV, sceenshots showing no docket number for the search warrant, and a cover letter accompanying the subpoenas are part of Mr. Tran's appendix.

The case is partially under seal. Mr. Tran has no objection to the sealing of the Government's filing or his own appendix, but has proceeded from the premise that because he is a public figure whose reputation has been unfairly tainted, he is entitled to seek his exoneration in the public eye.

**Magistrate Judge's Holdings**

The Magistrate Judge found, in substance that Mr. Tran has no standing to challenge the subpoenas to Mrs. Martin, her husband, or her company. As an alternative holding, the Magistrate Judge found that even if standing was established, the Motion to Quash should be denied on the

merits.  The Magistrate Judge found some of Mr. Tran's inferences, supporting his argument of abuse of the grand jury, to be too speculative.

The Magistrate Judge faulted the record before her, because it lacked affidavits to substantiate the allegations of Mr. Tran relating to the harassment of his sister by the federal authorities.

The Magistrate Judge found that the Government's cover letter was not, as Mr. Tran found it, an intimidation of the defense witness but an regular and expected progression of an investigation.

The Magistrate Judge noted caselaw to the effect that the Grand Jury is entitled to substantial deference and that its work, through subpoenas, is not to be lightly interrupted.  Finding Mr. Tran has not made the strong showing necessary to overcome this, the Motion to Quash was denied on the merits.

The Magistrate Judge additionally reviewed the content of the records demanded by the subpoena, in response to Mr. Tran's complaints, and found them reasonably germane and relevant.  Further than any flaws or excesses were not sufficient to overcome the presumption of regularity attaching to the Grand Jury's process.

The Magistrate Judge ruled that there is no requirement that the Government show that the sought documents were not available from other sources.[1]  The Magistrate Judge also rejected a technical argument that the subpoena does not comply with the Rules of Criminal Procedure for lacking the title of proceeding, finding this argument illogical.

**Facts**

---

[1] This answered an argument made by Mr. Tran, in trying to show the subpoenas were harassing and duplicative by pointing out that some of the sought material was and could be obtained from other sources, or that the Government already had it, and that the subpoena was suspicious.

1. Dean Tran is formerly a state senator from Fitchburg, Massachusetts

2. He is the subject of a federal grand jury investigation.

3. His house was searched pursuant to a search warrant in June 2023.

4. The docket of the search warrant does not appear in the electronic database, which would normally report that in that posture is inaccessible as sealed, rather than returning "Cannot find case 23-mj-01187"

5. The Seach Warrant sought materials related, in part, to Mrs. Martin's company and Mr. Tran's dealings and communications with them.  It also included every electronic device Mr. Tran possesses.

6. Part of the grand jury investigation relates to a job offer letter given to Mr. Tran offering him a job at Mrs. Martin's company at a six-figure annual salary.

7. Mrs. Martin is Mr. Tran's sister.

8. Mrs. Martin is the principal of the company which gave Mr. Tran the offer letter.

9. Mr. Tran did not accept the offer and he could not because of his childcare situation with his children home from a closed school, and the travel distance to the would-be jobsite.

10. The job offer letter was part of the formula used to award Mr. Tran unemployment and related government benefits.

11. Mr. Tran received unemployment after he failed in his attempt to be re-elected to the State Senate in 2020.

12. Mr. Tran subsequently went to work for A1A Auto for his acquaintance Mr. Green.

13. Mrs. Martin was interviewed by the federal government on a king-for-a-day basis in which anything she told them could not be used against her.[2]

---

[2] Mr. Tran has characterized this in his filings, perhaps too colloquially, as being offered immunity.  The Government categorically denies extending Mrs. Martin any immunity.

4

14. Mrs. Martin has maintained to federal officials that, contrary to the criminal case they hope to build, the job offer was genuine and she would have employed Mr. Tran.

15. Mrs. Martin apparently been badged and harassed by federal officials who, believing that she is lying to protect her brother, have sought to induce, cajole, or compel her to tell the truth, as the federal officials see it.

16. Mrs. Martin was subpoenaed, previously, to testify to the grand jury.

17. Mrs. Martin was apparently interviewed, aggressively, by federal officials on the day she appeared in response to the subpoena for testimony.

18. Mrs. Martin was apparently kept in a room and badgered by federal officials at the Federal Courthouse for a lengthy period of time, perhaps hours, in which they attempted to induce her to tell the truth about the job offer, as the federal government sees it.

19. Mrs. Martin apparently, tired of being badgered and harassed, insisted on testifying to the grand jury in line with her subpoena or be released.

20. Mrs. Martin apparently did in fact testify to the grand jury.

21. Mrs. Martin apparently told the grand jury that the job offer letter was genuine and, had he accepted, she would have employed Mr. Tran.

22. Mrs. Martin's testimony to the grand jury was truthful.

23. Mrs. Martin's testimony to the grand jury was favorable to Mr. Tran.

24. The Federal Government is highly displeased at the testimony presented to the grand jury.

25. The Federal Government, in consequence of Mrs. Martin's testimony, now apparently regards Mrs. Martin as some form of co-conspirator.

26. The current grand jury subpoenas are subpoena duces tecum and were issued after Mrs. Martin testified.

27. The subpoenas were issued with a cover letter which, in part, read "You are hereby requested <u>not</u> to disclose the existence of this subpoena, or the fact of your compliance therewith, to anyone. While you are not required to comply with this request, any such disclosure could impede the investigation and thereby interfere with the enforcement of federal criminal law."

28. It is a crime to "impede" or "interfere with" the "investigation" or "enforcement of federal criminal law."

29. Mrs. Martin has related that she feels afraid and coerced by the federal officials.

30. Mr. Tran's defense, in federal court, will be irreparably compromised if federal officials are able to coerce Mrs. Martin to change her testimony and abandon her favorable testimony in Mr. Tran's defense.

31. The subpoenas seek extensive financial documents from Mrs. Martin, her husband, and her company.

32. Some of the documents sought are documents which the federal government already possesses.

33. Some of the documents are documents that which the federal government has already take from other sources, including the search of Mr. Tran's house and electronic devices.

34. Some of the documents are not connected to Mr. Tran's potential employment or even the financial health of Mrs. Martin's business.

35. While the federal grand jury has been investigating, some unknown party made a complaint to the MassRMV alleging that Mr. Tran's two other siblings did not possess valid licenses.

36. The MassRMV has compelled the siblings to appear at hearings.

37. The purported complaint, that the Trans are not U.S. Citizens, is completely bogus.

38. One of the siblings appeared at the RMV, before the appointed hearing date. He provided all the requisite documents to establish beyond question his entitlement to a license. The clerk at the window initially assured him that he was all set. After conferring with a supervisor, the clerk changed her mind and insisted that Mr. Tran's sibling attend the hearing or have his license stripped.

39. The MassRMV has previously threatened to suspend Mr. Tran's own license, in the last year and, Mr. Tran believes, during the pendency of the federal grand jury investigation.

40. The Boston Globe discovered that the FBI were searching Mr. Tran's house in June 2023 and reported it. The reporter sought comment from Mr. Tran on the same day only a few hours after the search started. It is believed that the Globe sought comment while the search was still ongoing.

41. Mrs. Martin was in fact intimidated by the cover letter and the repetitive and unyielding badgering of federal officials to change her story.

42. Since this case began, it was publicly announced that Mr. Tran has separately been indicted by a Suffolk County grand jury. The Suffolk case was announced the day after Mr. Tran filed his motion to quash. Mr. Tran was arraigned on October 30th. These details, of the second state case, were not available to the Magistrate Judge.

## Argument

### I. The Magistrate Judge was wrong.

Mr. Tran is obliged to present his objections to the District Court judge before he may seek appellate review. Since some large portions of the law relating to grand juries and their subpoenas remain unpainted landscape, Mr. Tran must re-present his arguments to the District Court Judge who must review them de novo. Although some particulars are below, Mr. Tran

asserts that his original pleading were correct and that the denial of the motion to quash was erroneous. Mr. Tran asks that the District Court Judge review them *in toto*.

##   II.   The Magistrate Judge erred in faulting the factual record.

This case is docketed as a miscellaneous docket, but it is in character a civil proceeding. The document initiating the case is a motion, not a complaint but that is a matter of form. *See* Fed. R. Civ. Pro. Rule 1 (requiring that rules be interpreted and applied to "secure the just, speedy, and inexpensive determination of every action and proceeding); Rule 81 (listing actions to which Fed. R. Civ. Pro. do not apply and motions to quash are not amongst them). Resultingly, Mr. Tran was entitled to have his facts credited under the Rule 12(b)(6) standard, unless he will be afforded an opportunity to present evidence. The hearing before the Magistrate Judge was not an evidentiary one, it was oral argument on the motion.

To clarify for the appellate record, in case there is any doubt, Mr. Tran has presented the facts that he can prove with witness testimony should the occasion arise. The Court should take this as an offer of proof under Fed. R. Evid. Rule 103(a).

In larger respect, the Magistrate Judge erred in discounting Mr. Tran's facts for two additional reasons. Firstly, there is a factual dispute at the genesis of this case: was the job offer letter genuine and was Mrs. Martin's testimony confirming that accurate. Further requests for proof simply beg the question. Ruling against Mr. Tran, upon points of law is one thing but only if his facts are accorded credence or his is offered an opportunity provide his proofs. It certainly is not difficult to imagine that, having had the integrity of her testimony questioned by the federal officials, Mrs. Martin would be reluctant to put pen to paper for Mr. Tran. As for Mr. Tran, only a fool would, as a potential criminal defendant, say anything to anybody which could be used against him later. *See* <u>Watts v. Indiana</u>, 338 U.S. 49, 59 (1949) (Jackson, J. concurring in part and

8

dissenting in part) ("Under this conception of criminal procedure, any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances"). There mere presence of a judicial officer may be needed to prevent the weight of federal law enforcement from overwhelming Mrs. Martin's free choice to testify on Mr. Tran's behalf. Secondly, there is a scope problem. The test is objective. Mr. Tran asserts that he can prove that Mrs. Martin was intimidated. But the question is not subjective to Mrs. Martin's own mind but whether a reasonable person in her position would be.

### III. The Magistrate Judge erroneously credited normal systemic operations of federal law enforcement.

The Magistrate Judge obtained an admission from the Federal Government that the cover letter accompanying the subpoenas is routine, normal and in regular use. The regular and systemic nature of the posture of this case was also relied on, by the Magistrate Judge, in ruling against Mr. Tran. That something is or has become routine does not make it right.

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding… . In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means — to declare that the Government may commit crimes in order to secure the conviction of a private criminal — would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.

Olmstead v. US, 277 U.S. 438, 479, 485 (1928) (Brandies, J. dissenting). "And it nearly always is by insidious approaches that the citadels of liberty are most successfully attacked." Board of Ed. Central School Dist. V. Allen, 392 U.S. 236, 251-25 (1968) (Black, J, dissenting). "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." Boyd v. US, 116 U.S. 616, 635 (1886).

### IV. The Magistrate Judge did not examine the tenor of proceedings from a reasonable person sitting in Mr. Tran's seat

Mr. Tran cited from a long line of cases about over zealous prosecutors squelching defense witnesses. Occasionally there are direct threats to bring the witness to a grand jury or charge them for their testimony, but a post-testimony subpoena duces tecum certainly fits well in the mold. Moreover, on many occasions the prosecutors were doing what they were supposed to, required to do, such as giving a defense witness (often at trial but sometimes in the grand jury context) self-incrimination warnings. However the tenor in which they are delivered matters. Even in cases where the prosecutor must deliver a warning, or do something which might look ominous, the question has been the tenor of the prosecutor's actions and how it would affect a reasonable person in the defense shoes.

### V. There is a larger picture at stake in the nature of how our system works

Our adversarial system cannot survive if someone who tells the grand jury something which the prosecutor does not like become the subject of their own investigation. Or if the government doesn't like the testimony it can, on that basis, prosecute and investigate the witness. The apparent expansion of the investigation, to now include Mrs. Martin and things not related to Mr. Tran's job offer letter, herald the day of a "my truth or the highway" form of testimony.

The Government's advantages are already so overwhelming.  The grand jury meets in secret.  Unlike in state proceedings, the Grand Jury testimony almost never becomes available to the defense to cross examine the witnesses or dig into the substance of the Government's investigation.  The Government doesn't even have to disclose *Jenks* material until the trial is already underway.

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as `due process' is concerned, for ... [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence

Commonwealth v. Edgerly, 372 Mass. 337, 339-340 (1977) quoting Williams v. Florida, 399 U.S. 78, 82 (1970).

In this case, after relentlessly harassing the defense witness and failing to convince her to change her truthful testimony exonerating Mr. Tran, the Government wish to punish Mrs. Martin.  It would certainly be a lot easier to swallow that this was a routine duces tecum subpoena if it were issued in tandem with the testimonial subpoena, rather than later after the Government was displeased with the grand jury testimony.  That separation of timinig is not merely tactical.  Aided by the expansion of materials interesting the Government, into Mrs. Martin's personal life and things which do not relate to Mr. Tran, it looks retaliatory.

"While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." US. v. Chronic, 466 U.S. 648, 657 (1984).  The line of cases which Mr. Tran drew from heavily express the need for a free choice to testify, unhampered by coercion or fears of retaliation.  That cannot be true where simply saying truths the Government does not like cause the witness to become a new target, either of expanded investigation or retaliatory subpoenas.

Finally the Movant requests a de novo review of his original contentions, feeling that the Magistrate Judge did not weigh them properly.

Respectfully Submitted,

Dean Tran,
By his Attorney
/S/ Michael Walsh
Michael Walsh
Walsh & Walsh LLP
PO Box 9
Lynnfield, MA 01940
617-257-5496
Walsh.lynnfield@gmail.com

**Certificate of Service**

I, Michael Walsh, hereby certify that a copy of this objection was served upon AUSA Dustin Chao and Atty Goldberg on this 8th day of November, 2023 by email.
/S/ Michael Walsh